The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Bost, and the briefs and arguments on appeal. The appealing party has shown good ground to reconsider the evidence. Having reconsidered the evidence of record, the Full Commission modifies in part and affirms in part the Deputy Commissioners holding and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing on 19 March 1999 and in a Pre-Trial Agreement as:
 STIPULATIONS
1. At the time of the injury giving rise to this claim, the parties were subject to and bound by the provisions of the North Carolina Workers Compensation Act.
2. At such time, an employment relationship existed between plaintiff and defendant-employer.
3. Sedgwick of the Carolinas, Inc. was the servicing agent on the risk for the employer.
4. The parties stipulate that the plaintiffs average weekly wage would entitle her to the maximum weekly benefit applicable in 1996 of $492.00 per week.
5. The parties stipulate that the Forms 18, 19, and 61 may be received into evidence without further identification.
 ***********
Based upon the entire evidence of record, the Full Commission enters the following:
 FINDINGS OF FACT
1. Plaintiff is a 52-year-old divorced female who possesses a college degree with a Bachelor of Science in home economics. In October 1996, plaintiff was employed as a Senior Employment Director and Tourism Contract Manager for the defendant, Mid-East Commission in Washington, North Carolina. Plaintiffs prior work experience includes being an elementary school teacher.
2. In 1996, the ground floor of the McQuay Building where the Mid-East Commission was located was flooded following Hurricane Bertha in July 1996 and Hurricane Fran in early September 1996.
3. On or about 15 July 1996, following Hurricane Bertha, defendant-employers employees returned to work and were instructed to clean their work areas and dispose of all items that were not useable.
4. Between 15 July and 3 September 1996, the McQuay Building was renovated, including the replacement of all carpet on the ground level of the building.
5. After Hurricane Bertha, plaintiff took home some items from her workplace. She stored them in her kitchen and in a small room she converted into an office. Other records were taken to the home of plaintiffs assistant and some of the records and furniture that were considered salvageable were stored in a large area of the building not used for offices during the period of renovation. Other items were eventually stored in a facility located on Highway 264.
6. Plaintiff went to the storage facility on Highway 264 on or about 7, 8, 9, and 10 October 1996, in order to retrieve items from the storage bin for possible usage. On these occasions plaintiff would climb into and around the storage bin to locate "salvageable materials.
7. On or about 7 October 1996, plaintiff was injured due to exposure to heavy mold contamination at the storage bins.
8. Plaintiff took a pre-scheduled vacation day on 11 October 1996 and traveled to Wilmington to visit her daughter.
9. On or about 23 October 1996, plaintiff was seen at Wilmington Health Care Associates. On this occasion, plaintiff related that she had experienced sinus symptoms after working around water damaged items.
10. Plaintiff received medical treatment from various doctors, including Drs. Credle, Lane Lieberman, and Young.
11. On 9 November 1996, plaintiff was put on anorectic therapy for obesity. Plaintiff was referred to Dr. Credle, a pulmonologist within Wilmington Health Care Associates, for her respiratory complaints.
12. In January 1997, Dr. Credle released plaintiff to return to work activities with the only restriction being no exposure to a contaminated environment; and specifically no exposure to heavy mold.
13. Plaintiff returned to work January 1997. Plaintiff testified that she could not work in the McQuay Building and had to leave early on 22 January 1997. However, plaintiff and her son re-entered the building at approximately 7:04 p.m. and videotaped until approximately 8:02 p.m. areas on the ground floor of the McQuay Building. At no time during the approximately one-hour video did plaintiff exhibit any signs or symptoms of problems.
14. Plaintiff did not return to her position with defendant-employer on 23 January 1997.
15. Dr. Credle testified that he would expect plaintiff to have demonstrated coughing and shortness of breath within a few minutes after plaintiff had been exposed.
16. On 22 June 1998, plaintiff was seen by Dr. Alan Hayes for an independent medical exam. Dr. Hayes viewed the video and testified that he did not observe plaintiff cough or have difficulty breathing, and that her voice quality appeared to be normal.
17. As of January 1997, the lower level of the McQuay Building had been renovated. The carpet had been replaced and the walls including insulation had been torn down to the studs and replaced.
18. Plaintiff was capable of returning to work in the McQuay Building without experiencing the onset of any significant symptoms allegedly attributable to a respiratory condition.
19. Plaintiffs position as Senior Employment Director and Tourism Contract Manager was available for her at the Mid-East Commission in January 1997.
20. In order to further accommodate plaintiff in February 1997 defendant-employer offered plaintiff an office on the second floor in an office that had never been flooded. However, plaintiff refused the offer of employment at the McQuay Building in January and February 1997. This refusal of employment was unjustified and not reasonable. Dr. Credles opinion that plaintiff could not return to work in the McQuay Building was based on an inaccurate representation provided to him by plaintiff that the McQuay Building was significantly contaminated with mold.
21. Plaintiffs home is also located on the Pamlico River in Bath, North Carolina, and the bottom portion of plaintiffs home was also flooded in July 1996 and September 1996 following Hurricanes Bertha and Fran.
22. Between 5 May 1997 and 22 July 1997, plaintiff applied for unemployment insurance benefits with the Employment Security Commission. During this time period, plaintiff received approximately $4,340.00 in unemployment insurance benefits. Melanie Thomas, a vocational rehabilitation specialist, testified that within a forty (40) mile radius of claimants home in 1996, 1997 and most of 1998, there existed job opportunities for plaintiff from which plaintiff could have reasonably been expected to obtain a position compatible with her education, work experience, and with any restrictions associated with her alleged respiratory condition.
23. Plaintiffs alleged respiratory condition did not worsen after July 1997. It has essentially remained the same. However, plaintiff again refused an offer of employment to return to work at the Mid-East Commission in the McQuay Building in October 1997. Plaintiff has not looked for work since 22 July 1997.
24. Plaintiff began seeing Dr. Allan Lieberman of the Center for Occupational and Environmental Medicine of North Charleston, S.C. on 9 October 1997.
25. Dr. Lieberman diagnosed plaintiff with RADS, and additionally reactive upper airway dysfunction syndrome and asthma. Dr. Liebermans restrictions for plaintiff were for plaintiff to avoid areas that contain airborne mold and substances like Clorox that act as an irritant to the airway.
26. Dr. Lieberman, testifying in 1998, stated that plaintiff was better than she was in 1996.
27. Plaintiff continues to engage in a significant number of activities, such as driving her car for extended distances, going to restaurants, appearing at various hearings, and visiting friends homes. These activities indicate that the respiratory condition she suffers from is well controlled and does not significantly interfere with her activities.
28. Plaintiff was diagnosed by Dr. Credle and Dr. Hayes as having Reactive Airways Disease Syndrome (RADS) as a result of exposure to heavy concentrations of mold in her employment.
29. The undersigned gives greater weight to the testimonies of Dr. Credle and Dr. Hayes than to Dr. Liebermans as Dr. Credle and Dr. Hayes are both board certified specialists in pulmonary medicine. Both Dr. Credle and Dr. Hayes concurred that Dr. Liebermans testing is not generally accepted by physicians board certified in the field of pulmonology medicine.
30. Deputy Commissioner Mary Moore Hoags 21 January 1998 order awarding defendants $1,000.00 in attorneys fees in connection to a motion to compel was improvidently granted.
 ***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an injury by accident arising out of and in the course of the employment on or about 7 October 1996. N.C. Gen. Stat.97-2(6).
2. As a result of the compensable injury, plaintiff is entitled to temporary total disability compensation at the rate of $492.00 per week for the period from 11 October 1996 through 22 January 1997. N.C. Gen. Stat. 97-29.
3. Plaintiff is entitled to have the defendant pay for medical expenses incurred or to be incurred as a result of the compensable injury as may be required to provide relief, effect a cure or lessen the period of disability. N.C. Gen. Stat. 97-2(19).
4. If an injured employee refuses employment procured for her suitable to her capacity, she shall not be entitled to any compensation at any time during the continuance of such refusal unless in the opinion of the Industrial Commission such refusal was justified. N.C. Gen. Stat. 97-32.
5. Plaintiffs failure to return to work on 23 January 1997 was an unreasonable refusal to accept suitable employment proffered by defendant-employer, and was not justified. N.C. Gen. Stat. 97-32.
6. Deputy Commissioner Mary Moore Hoags 21 January 1998 order awarding defendants $1,000.00 in attorneys fees in connection to a motion to compel was improvidently granted and is hereby RESCINDED.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission modifies in part and affirms in part the Deputy Commissioners holding and enters the following:
 AWARD
1. Subject to a reasonable attorneys fee herein approved, defendant shall pay temporary total disability compensation to the plaintiff at the rate of $492.00 per week for the period from 11 October 1996 through 22 January 1997. As said compensation has accrued, it shall be paid in a lump sum.
2. A reasonable attorneys fee of twenty-five percent of the compensation awarded to plaintiff in paragraph one above is hereby approved to be deducted from sums due plaintiff and paid directly to counsel.
3. Defendant shall pay medical expenses incurred or to be incurred when bills for the same have been approved, in accordance with the provisions of the Act.
4. Plaintiffs claim for further compensation as a result of her compensable injury after 22 January 1997 must be, and the same is, DENIED.
5. Defendant shall pay the costs.
This is the ___ day of May, 2001.
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER